AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

UNITED STATES DISTRICT COURT
for the
Northern District of New York

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
SEP 15 2017
LAWRENCE K. BAERMAN, CLERK
ALBANY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A WHITE IPHONE 7 AND BLACK ALCATEL ONETOUCH CELLULAR PHONE SEIZED FROM NELSON RODRIGUEZ, CURRENTLY LOCATED AT 11A CLINTON AVENUE, SUITE 911, ALBANY, NEW YORK | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:17-mJ-413-DJS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A

located in the ___Northern___ District of ___New York___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a controlled substance with intent to distribute |
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute and to distribute a controlled substance |
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

☒   Continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days):
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason T. Sherman, ATF

*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept 15, 2017

*Judge's signature*

City and State:   Albany, NY         Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A WHITE IPHONE 7 AND BLACK ALCATEL ONETOUCH CELLULAR PHONE SEIZED FROM NELSON RODRIGUEZ, CURRENTLY LOCATED AT 11A CLINTON AVENUE, SUITE 911, ALBANY, NEW YORK | Case No. 1:17-mj-413-DJS |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Jason T. Sherman, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since 2008. I am currently assigned to the ATF Albany Field Office. I am tasked with the investigation and enforcement of federal firearms laws and associated violations, to include any other federal violations encountered during the course of my duties. Prior to this employment, I was a Corrections Officer and Deputy Sheriff with the Albany County Sheriff's Office, in Albany, New York.

1

3. I am a graduate of the New York State Peace Officers course in Albany, New York, the Zone Five Regional Law Enforcement Training Academy in Schenectady, New York, the Federal Law Enforcement Training Center's Criminal Investigation Training Program, and the ATF Special Agent Basic Training Program located in Glynco, Georgia, the Firearms Instructor's Training Program in Artesia, New Mexico, and the Firearms Interstate Nexus Training program in Martinsburg, West Virginia. I have also attended numerous classes, seminars, and training lectures in the investigation of criminal violations of federal and state laws.

4. During my tenure as an ATF Special Agent, I have participated in numerous investigations and the execution of numerous search warrants and arrest warrants where illegally purchased/trafficked firearms, narcotics, electronic scales, packaging materials, cutting agents, books/ledgers indicating sales, receipts, computers, cellular telephones, and other items used to facilitate firearms and narcotics trafficking were seized. I have personally conducted and/or assisted in numerous investigations of criminal acts involving violations of Title 18, United States Code, Sections 922(g)(1) (possession of a firearm by a previously convicted felon), 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and 371 (conspiracy to commit a federal crime), and of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute a controlled substance) and 846 (conspiracy to possess with intent to distribute and to distribute a controlled substance).

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute a controlled substance), Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute and to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon), have been committed by Nelson RODRIGUEZ. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a white iPhone 7 and a black Alcatel OneTouch Cellular Phone, both seized from Nelson RODRIGUEZ, hereinafter the "Devices." The Devices are currently located at 11A Clinton Avenue, Suite 911, Albany, New York.

8. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. On June 20, 2017, a confidential informant ("CI") working with the Amsterdam Police Department ("APD") in Amsterdam, New York, conducted a controlled purchase of cocaine base, or "crack," from Mary PIMBLE and Nelson RODRIGUEZ. More specifically, the CI called PIMBLE and requested to meet, and PIMBLE instructed the CI to meet at PIMBLE's residence. After the CI was search for drugs and money with negative results, an undercover officer ("UC") drove the CI to PIMBLE's residence, where PIMBLE walked up to the UC's

vehicle and was handed $50. PIMBLE informed the CI and UC that she was waiting for an unknown male, subsequently identified as RODRIGUEZ, to deliver the drugs. Shortly thereafter, a grey 2013 Chevrolet Equinox registered to RODRIGUEZ (the "Equinox") arrived and PIMBLE entered the vehicle, exited it, and then returned to the UC's vehicle where she handed the CI three plastic corner ties containing a white-chunky substance, which appeared to be cocaine base, or crack, and subsequently field-tested positive for cocaine. Members of the APD followed the Equinox to the second floor, right side apartment at 2 Park Street, Amsterdam, New York ("2 Park Street Apartment"), where RODRIGUEZ was observed exiting the Equinox and entering the apartment.

10. Seven days later, on June 27, 2017, the CI called PIMBLE and was instructed to meet at PIMBLE's residence. After the CI was searched for drugs and money with negative results, the UC and CI drove to PIMBLE's residence, where PIMBLE walked up to the UC's vehicle. The CI exited the UC's vehicle, walked with PIMBLE to her residence, and handed $50 to PIMBLE. Shortly thereafter, the Equinox arrived at PIMBLE's residence, PIMBLE entered the Equinox, and the CI returned to the UC's vehicle. A minute later, PIMBLE called for the CI, the CI walked to PIMBLE, and PIMBLE handed the CI three plastic corner ties containing a white-chunky substance, which appeared to be cocaine base, or crack, and subsequently field-tested positive for cocaine. Following the transaction, members of the APD followed the Equinox to the 2 Park Street Apartment, where RODRIGUEZ was observed exiting the Equinox and entering the apartment.

11. On August 3, 2017, APD officers executed an arrested warrant for RODRIGUEZ, who was stopped while driving the Equinox. When an officer informed RODRIGUEZ of the arrest warrant, RODRIGUEZ stated that he just left his 5- and 10-year-old children at home

alone sleeping, and when asked if anyone could pick up the children, RODRIGUEZ stated that he would give the police the crack cocaine in his residence if his sister was allowed into the residence to get his children. When asked how much crack cocaine was in the residence, RODRIGUEZ stated "about 30 bags."

12. That same day, the APD applied for and obtained a search warrant for the 2 Park Street Apartment from the Amsterdam City Court. In executing the warrant, APD officers seized the following items from RODRIGUEZ's bedroom, which he shared with his girlfriend: (i) a plate with suspected cocaine base and a razor blade on a dresser; (ii) a digital scale next to the plate on the dresser; (iii) suspected marijuana on the same dresser; (iv) approximately 30 individually wrapped packages of cocaine base in a dresser drawer; (v) approximately 8 grams of cocaine base in a plastic bag in the pocket of a denim jacket in the closet; (vi) approximately $2,000 in cash in another pocket of the same denim jacket. APD officers also discovered a Raven Arms model HP 25, .25 caliber pistol, Serial Number 4101412, with a loaded magazine, between the mattress and bedspring.

13. Based on my training and experience, I am aware that the quantity of cocaine base discovered in RODRIGUEZ's apartment is consistent with distribution, not personal use, and that the large amount of cash, digital scale, and individually wrapped packages of cocaine base further indicate that the cocaine base was for distribution. Moreover, I am aware that narcotics traffickers frequently possess firearms in connection with the narcotics trade. Firearms are utilized to, among other things, protect traffickers from rival drug dealers and to collect drug debts.

14.     At the time he was stopped by the APD on August 3, 2017, RODRIGUEZ possessed a white iPhone 7 and a black Alcatel OneTouch Cellular Phone, i.e., the Devices, which were discovered on the front passenger seat of the Equinox and in RODRIGUEZ's hand and seized by the APD. I am aware, based on my training and experience, that narcotics traffickers utilize cellular phones to traffic narcotics. The cellular phones are utilized to communicate concerning all facets of the drug trade, including relaying messages between members of the drug-trafficking organization, arranging drug sales, and to alert coconspirators to the presence of law enforcement. In utilizing cellular phones to communicate, narcotics traffickers place and receive phone calls, send and receive text messages, and with increasing frequency, utilize Internet-based methods of communication such as Facebook.

15.     The Devices are currently in the lawful possession of the ATF and in storage at 11A Clinton Avenue, Suite 911, Albany, New York. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the APD.

16.     A criminal record check reveals that or about October 23, 2009, RODRIGUEZ was convicted of attempted murder, in violation of W. Va. Code §§ 61-2-1 and 61-11-8, a felony offense, in the Circuit Court of Beckley County, West Virginia, and sentenced to 1 to 3 years in prison.

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  18. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

  20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

24.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit

and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Jason T. Sherman
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on September 15, 2017:

_____
Hon. Daniel J. Stewart
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a white iPhone 7 and a black Alcatel OneTouch Cellular Phone, both seized from Nelson RODRIGUEZ, hereinafter the "Devices." The Devices are currently located at 11A Clinton Avenue, Suite 911, Albany, New York.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. §§ 922(g)(1), and 924(c) and involve Nelson RODRIGUEZ since June 1, 2017, including:

   a. The distribution of controlled substances and the proceeds of the distribution of controlled substances;

   b. Statements pertaining to a conspiracy to distribute controlled substances;

   c. lists of customers and related identifying information;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. The possession, purchase, or use of firearms;

   g. The possession and/or use of firearms in connection with the narcotics trade;

   h. any information recording Nelson RODRIGUEZ's schedule or travel from June 1, 2017 to the present;

   i. all bank records, checks, credit card bills, account information, and other financial records.

1

      2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.